IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

BILLINGS DIVISION

| | |
|---|---|
| TIMOTHY McCOLLOUGH,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>MINNESOTA LAWYERS<br>MUTUAL INSURANCE<br>COMPANY and JOHN DOES I<br>and II,<br><br>　　　　　　Defendant. | CV 09-95-BLG-RFC-CSO<br><br><br>**FINDINGS AND<br>RECOMMENDATIONS OF<br>UNITED STATES<br>MAGISTRATE JUDGE** |

Plaintiff Timothy McCollough ("McCollough") filed this insurance bad faith action against Defendant Minnesota Lawyers Mutual Insurance Company ("MLM") after he prevailed in his lawsuit against MLM's insured, Johnson, Rodenburg & Lauinger ("JRL"). *See Cmplt. (Dkt. 4)* at 2-5. Jurisdiction is based on diversity.

This order addresses MLM's pending Motion for Summary Judgment *(Dkt. 66)* and McCollough's Cross Motion for Partial Summary Judgment *(Dkt. 69)*.

# I. PERTINENT BACKGROUND

In December 2007, McCollough sued JRL and CACV of Colorado, LLC ("CACV"), alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), Montana's Unfair Trade Practices and Consumer Protection Act, abuse of process, and malicious prosecution. *McCollough v. Johnson, Rodenberg & Lauinger*, CV 07-166-BLG-CSO ("*underlying JRL case*") (Final Pretrial Order, Dkt. 140, at 4). McCollough settled with CACV during discovery, *id*. (*Notice of Dismissal, Dkt. 5, at 1).

JRL was insured under an MLM professional liability policy. *Dkt. 68 at ¶ 19.* MLM's first notice of McCollough's claim against JRL was the federal court complaint; no prior claim had been submitted to MLM. *Dkt. 68 at 6, ¶ 16.* JRL's insurance policy with MLM provides, in relevant part:

> WE[, MLM,] have the exclusive right to investigate, negotiate and defend CLAIMS seeking DAMAGES against the INSURED for which this policy provides coverage. The INSURED may not negotiate or agree to a settlement of any CLAIM without OUR prior consent. There is no coverage under this policy to pay any part of a settlement of a claim made without our consent.
>
> WE will not settle a CLAIM without the written consent of the

INSURED.  If the INSURED refuses to consent to any settlement recommended by US and elects to contest the CLAIM or continue legal proceedings, then OUR liability for the CLAIM will not exceed the amount for which the CLAIM could have been settled within the applicable limit including CLAIM EXPENSE incurred with OUR consent to the date of such refusal.  The INSURED must cooperate with US in the investigation and defense without charge by the INSURED or reimbursement of the INSURED's expenses, subject to the Supplementary Payment Provision of this Policy.

*Dkt. 27-1 at 7* ("Defense and Settlement" section of relevant insurance contract) (emphasis in original).  The second paragraph of the above-quoted language is known in the insurance industry as the "hammer clause."  *Dkt. 75 at ¶ 66.*  MLM can invoke the hammer clause if it negotiates settlement terms it proposes to accept, but the insured refuses to consent.  *Id.*

In the underlying JRL case, the parties engaged in settlement negotiations in September 2008.  *Dkt. 74-8 at 2.*  McCollough demanded $900,000 to settle his claims; MLM offered $20,000.   Neither side submitted any further firm offers to settle.  *Dkt 68-4 (Depo. John Heenan) at 18.*

On January 8, 2009, this Court granted McCollough's motion for partial summary judgment, finding JRL liable under the FDCPA.  *See*

*Dkt. 96 (underlying case).* In March 2009, JRL's defense counsel suggested to McCollough's counsel that the defense "could probably discuss" settlement in the "$50,000 range" (*Dkt. 74-13 at 2*), but McCollough's lawyer, John Heenan, was not "interested in the slightest" because his "attorneys' fees at [that] point [were] $69,000." *Dkt. 68-4 at 19 (Heenan Depo.).* No further settlement discussions are reported by either party.

In April 2009, a jury found in McCollough's favor on the remaining claims. *Dkt. 68-2 at 2-4.* Pursuant to the jury's verdict, the clerk entered judgment in McCollough's favor for $301,000 in damages and $107,770.17 in attorney's fees and costs. *Dkt. 184 (underlying case).* The judgment was affirmed on appeal. *Dkt. 211 (underlying case).*

## II. **PARTIES' ARGUMENTS**

### A. **McCollough's Arguments**

McCollough alleges that MLM violated MCA §§ 33-18-201(1), (4), and (6) of the Montana Insurance Code's Unfair Trade Practices Act ("MUTPA"). *Dkt. 4 at ¶ 9.* He seeks summary judgment only as to

MLM's liability under subsections (4) and (6), contending that fact issues preclude summary judgment on his claim under subsection (1). *Dkt. 70 at 23.*

In support of his motion, McCollough first argues that the undisputed facts establish that MLM breached its duty to conduct a reasonable investigation based upon all available information. *Dkt. 70 at 6-7.* McCollough next argues that the undisputed facts establish that MLM failed to attempt in good faith to effectuate a prompt, fair and equitable settlement of McCollough's "clear liability claim." *Dkt. 70 at 12.*

In response to MLM's motion for summary judgment, McCollough maintains that MLM's position regarding federal supremacy is contrary to Montana's authority, under the McCarran-Ferguson Act, 15 U.S.C. §§ 1011-1015, to regulate the business of insurance. *Dkt. 70 at 26-29.* Finally, McCollough argues that genuine issues of material fact preclude summary judgment on McCollough's damages claim. *Dkt. 70 at 29-31.*

### B.    MLM's Arguments

MLM moves for summary judgment on all issues.  *Dkt. 66 at 2.*
MLM first argues that the Supremacy Clause of the United States
Constitution bars application of the MUTPA here.  MLM contends that
McCollough is using the MUTPA to sanction it "as a proxy for the
dogged defense put up by its insured."  *Dkt. 67 at 18.*  If this is
permitted, MLM argues that Montana law would be elevated so that it
controls the conduct of federal litigation – putting it in conflict with
Rule 11 of the Federal Rules of Civil Procedure and 28 U.S.C. § 1927.
*Dkt. 67 at 17.*  MLM contends that all actions in the underlying suit
were made in the exercise of JRL's right as a federal litigant to contest
McCollough's allegations, and "Montana may not reach into the conduct
of the federal litigation to sanction the parties or the insurer funding
the party's defense to sanction them for such conduct."  *Dkt. 67 at 24.*

Second, MLM argues that, as a matter of law, its investigation
was reasonable because it uncovered "all material and substantive facts
underlying McCollough's claim[.]" *Id.*

Third, MLM argues that it was not in control of settlement in the

underlying action, and therefore the duty to effect a fair settlement is inapplicable. *Dkt. 67 at 25.* MLM states that the consent clause in the subject insurance contract leaves the decision to settle with the insured – therefore, MLM cannot be liable for JRL's decision not to settle. *Dkt. 67 at 26-27.* Additionally, MLM argues that a prompt, fair and equitable settlement could never have been reached in this case because McCollough refused to offer less than $900,000 in the settlement negotiations, and was instead seeking vindication and an apology from JRL. *Dkt. 67 at 27-28.*

Finally, MLM argues that the element of causation is absent in this case. MLM argues that the source of McCollough's emotional distress, the only claimed damages in this case, stems from his perceptions of wrongdoing by JRL, and not from the process of resolving his claims against them. *Dkt. 67 at 29.*

## III. <u>SUMMARY JUDGMENT STANDARD</u>

Fed. R. Civ. P. 56(a) requires the court to grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law.  The movant bears the initial responsibility of informing the court

of the basis for its motion, and identifying those portions of the

pleadings, depositions, answers to interrogatories, and admissions on

file, together with the affidavits, which it believes demonstrate the

absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*,

477 U.S. 317, 323 (1986).  Where the parties file cross-motions for

summary judgment, the court must consider each party's evidence,

regardless under which motion the evidence is offered.  *Las Vegas*

*Sands, LLC v. Nehme*, 632 F.3d 526, 532 (9th Cir. 2011).

Entry of summary judgment is appropriate "against a party who

fails to make a showing sufficient to establish the existence of an

element essential to that party's case, and on which that party will bear

the burden of proof at trial."  *Celotex Corp.*, 477 U.S. at 322.  A moving

party without the ultimate burden of persuasion at trial has both the

initial burden of production and the ultimate burden of persuasion on a

motion for summary judgment.  *Nissan Fire & Marine Ins. Co. v. Fritz*

*Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  If the moving

party meets its initial burden, the burden then shifts to the opposing

party to establish a genuine issue as to any material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The purpose of summary judgment is to pierce the pleadings and to assess the proof to see whether there is a genuine need for trial. *Id.* at 587 (quotation omitted). In resolving a summary judgment motion, the evidence of the opposing party is to be believed, *Anderson*, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the Court must be drawn in favor of the opposing party, *Matsushita*, 475 U.S. at 587 (citation omitted).

## IV.  DISCUSSION

As here applicable, Montana law creates an independent cause of action by McCollough, as a third-party claimant, against an insurer such as MLM for alleged damages caused by the insurer's violation of subsections (1), (4), and (6). *Redies v. Attorneys Liability Protection Soc.*, 150 P.3d 930, 937 (Mont. 2007). These subsections provide that an insurer may not:

> (1)  misrepresent pertinent facts or insurance policy provisions relating to coverage at issue;
> ...

(4)    refuse to pay claims without conducting a reasonable investigation based on all available information;

...

(6)    neglect to attempt in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear.

...

MCA § 33-18-201.  Whether an insurer violated these provisions is a separate issue from the issues in the underlying tort claim.  *Peterson v. St. Paul Fire and Marine Ins. Co.*, 239 P.3d 904, 911 (Mont. 2010) (citing *Graf v. Continental Western Ins. Co.,* 89 P.3d 22, 25-26 (Mont. 2004)).

## A.    <u>MLM's Motion For Summary Judgment Based on the Supremacy Clause</u>

The Court first addresses MLM's contention that the Supremacy Clause preempts and bars all of McCollough's claims.  The Supremacy Clause states that the "Constitution, and the Laws of the United States ... shall be the supreme Law of the Land ... ."  U.S. Const. Art. VI, para. 2.  The Supremacy Clause invalidates state laws that interfere with, or are contrary to, federal law.  *Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist.*, 498 F.3d 1031, 1039 (9th Cir. 2007).  Federal preemption

occurs when: (1) Congress enacts a statute that explicitly pre-empts state law; (2) state law actually conflicts with federal law; or (3) federal law occupies a legislative field to such an extent that it is reasonable to conclude that Congress left no room for state regulation in that field. *Id.*

Citing no authority specifically so holding, MLM contends that the federal procedural devices designed to curtail abusive litigation, Rule 11 and 28 U.S.C. § 1927, preempt the MUTPA when parties litigate in federal court. The Court concludes in this context that, under the federal preemption standard set forth above, these procedural rules do not preempt substantive Montana law regulating the business of insurance.

The "central purpose of Rule 11 is to deter baseless filings in district court and thus, consistent with the Rules Enabling Act's grant of authority, streamline the administration and procedure of the federal courts." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990). "Rule 11 imposes a duty on attorneys to certify that ... any papers filed with the court are well grounded in fact, [and] legally

tenable...." *Id.* Similarly, the purpose of 28 U.S.C. § 1927 is "the

deterrence of intentional and unnecessary delay in the proceedings."

*Zuk v. E. Pennsylvania Psychiatric Inst. of the Med. Coll. of*

*Pennsylvania*, 103 F.3d 294, 297 (3d Cir. 1996) (quoting *Beatrice Foods*

*v. New England Printing*, 899 F.2d 1171, 1177 (Fed. Cir. 1990)). The

statute, by its terms, applies exclusively to attorneys. *Navarro v.*

*General Nutrition Corp.,* 2004 WL 2648373 * 20 (N.D. Cal. 2004).

The purposes behind the regulation of attorney conduct in Rule 11

and 28 U.S.C. 1927 differ significantly from the purpose of the MUTPA,

which is "to regulate trade practices in the business of insurance in

accordance with the intent of congress as expressed in [the McCarran-

Ferguson Act.]" MCA § 33-18-101. Thus, the Court cannot find express

preemption, conflict preemption, or field preemption. *See, e.g., U.S.*

*Express Lines Ltd. v. Higgins*, 281 F.3d 383, 393 (3d Cir. 2002) (finding

that Rule 11 does not preempt state law claims for abuse of process

claims or "similar torts providing relief for misconduct in federal

litigation"). *See generally 19 Fed. Prac. & Proc. Juris. § 4515 (2d ed.).*

Furthermore, the McCarran-Ferguson Act provides that "[n]o Act

of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, or which imposes a fee or tax upon such business, unless such Act specifically relates to the business of insurance." 15 U.S.C. § 1012(b). The McCarran-Ferguson Act "establishes a form of inverse preemption that prevents a federal law of general applicability from inadvertently impairing state laws regulating the business of insurance." *Ojo v. Farmers Group, Inc.*, 565 F.3d 1175, 1179 (9th Cir. 2009) (citing *Humana Inc. v. Forsyth*, 525 U.S. 299, 306–07 (1999)). Rule 11 and 28 U.S.C. 1927, federal rules of generally applicability, cannot impair, and thus do not preempt, the MUTPA.

The Court concludes here that the MUTPA is not preempted by Rule 11 or 28 U.S.C. § 1927, and MLM is not entitled to summary judgment on this basis.

**B.** **Cross Motions for Summary Judgment on McCollough's Claim that MLM Violated its Duty to Investigate**

Under the MUTPA, an insurer may not "refuse to pay claims without conducting a reasonable investigation based on all available

information[.]" MCA § 33-18-201(4).  Determining whether an insurer's investigation was reasonable involves an analysis of all information available to the insurer when it denied the claim.  *Lorang v. Fortis Ins. Co.*, 192 P.3d 186, 203 (Mont. 2008).  Reasonableness is generally a question of fact for the jury to resolve; however, questions of fact may be determined as a matter of law on summary judgment if reasonable minds could reach but one conclusion on the issue.  *Id.* at 214.

As noted above, MLM did not receive notice of McCollough's claim against JRL until the underlying action was filed.  MLM was therefore unable to conduct any investigation prior to the underlying lawsuit.  A similar situation was presented in *Madden v. Attorneys Liability Protection Society, Inc.,* 29 Mont. Fed. Rep. 33 (D. Mont. 2001), *aff'd*, 2003 WL 245223 (9th Cir. (Mont.) 2003) (unpublished).[1]  Although counsel retained by the insurer investigated Madden's claim, Madden

---

[1]The Ninth Circuit stated that "in the absence of some event that would put the insurer on notice of an insufficiency in the investigation conducted by the competent counsel it retained to defend its insured, that investigation is attributable to the insurer and fulfills its obligation under Montana law."  *Id. at ** 2 (quoting  Ensey v. Colorado Cas.*, 30 P.3d 350, 352 (Mont.2001).

-14-

argued that the insurer was obligated to conduct an additional, independent investigation. This Court rejected Madden's argument, concluding that in the absence of some triggering event or circumstance that would put the insurer on notice that something was amiss in the handling of the claim, the insurer did not have an independent duty to investigate. *Id*. at 34. "To hold otherwise, and to establish a duty on the part of the carrier to second-guess an informed opinion that a case is defensible, puts the carrier at odds with the insured, and in bed with the claimant." *Id.*; *see also Ensey v. Colorado Cas.*, 30 P.3d at 352 (attorney retained by insurer can act on insurer's behalf to fulfill obligations under Section 33-18-201).

This reasoning is supported by other authorities. One treatise explained:

> Not only would it be pointless for an insurer to attempt to duplicate the investigation that defense counsel does (*e.g.,* trying to interview a witness after counsel has deposed the witness), but (a) an insurer could not effectively duplicate counsel's investigation even if the insurer tried (since, *e.g.,* the insurer cannot subpoena witnesses or documents), and (b) it is counsel, not the insurer, who has the knowledge and expertise to determine what the insured's legal defenses are and how the facts impact on those defenses.

1 *Insurance Claims and Disputes 5th* § 2:5.

McCollough has not raised an issue of fact whether MLM should

have been aware of alleged insufficiency of counsel's investigation.  To

the contrary, Mr. Heenan testified as follows:

> Q.  During the JRL case, did the Bohyer, Simpson firm and the
> other lawyers that were involved before them, did they request
> and conduct a reasonable and independent discovery of your
> claims?
>
> A.  I don't know.  That's a loaded question, I think.  What was
> their reasonable inquiry into my claims?  I mean, they deposed
> my client; they served written discovery; they had access to our
> claims.
>
> Q.  Let's put it another way, John.  Was there any facts about
> your claim that were withheld from Bohyer and Simpson in the
> Johnson, Rodenburg case?
>
> A.  No, sir.
>
> Q.  So their efforts at discovery and investigation uncovered all of
> the material substantive information bearing on your claim?
>
> A.  There were no surprises at trial.
>
> Q.  I'd like you to answer my question, John.  If you would, please.
>
> [Question read back]
>
> A.  Yes.  There were no surprises at trial.

*Dkt. 68-4 at 20-21.*  Thus, McCollough's counsel during the underlying

trial acknowledged that defense counsel's investigation uncovered all of the material substantive information bearing on McCollough's claim. Based on the holding in *Madden,* therefore, the Court concludes that MLM is entitled to summary judgment on McCollough's failure to investigate claim. Accordingly, McCollough's cross motion on this issue should be denied.

### C. Cross Motions for Summary Judgment on McCollough's Claim for Failure to Attempt to Effectuate Settlement

#### 1. MLM's Motion

The MUTPA provides that an insurer may not "neglect to attempt in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear[.]" MCA § 33-18-201(6).

MLM argues that it cannot be liable under this subsection of the MUTPA, and therefore it is entitled to summary judgment, because the insurance policy granted JRL "the exclusive control over settlement." *Dkt. 67 at 26.* MLM cites *Mutual Ins. Co., Ltd. v. Murphy*, 630 F. Supp. 2d 158 (D. Mass 2009), for the legal proposition that when an insurer

does not retain control over the defense or settlement of the claim, and the insured never agrees to settle, the insurer does not have a duty to effectuate prompt, fair, and equitable settlement. *Dkt. 67 at 26* (citing *Murphy*, 630 F. Supp. 2d at 170).

MLM's reliance on *Murphy* is misplaced. The insurance policy at issue in *Murphy* provided coverage only above a $50,000 "retention amount," and was a "hybrid" between a traditional insurance policy and an excess indemnity policy. *Murphy*, 630 F. Supp. 2d at 165. Under that policy, the insured had the duty to retain its own counsel for the defense or settlement of a claim, and explicitly provided that the insurer "shall not be called upon to assume charge of the settlement, or the defense of any claim made, or suit brought, or proceeding instituted against the insured." *Id*. at 162. The policy did not contain a hammer clause, but stated that no settlement could be made without the insurer's consent. *Id*.

Unlike the insurance policy in *Murphy*, which relieved the insurer from the obligation to settle or defend a claim, the insurance policy at issue here grants MLM the "<u>exclusive</u> right to investigate, negotiate

and defend claims seeking damages against the insured..." *Dkt. 27-1 at 7 (emphasis added)*. This fact is undisputed. *See Dkt. 75* at ¶ 3. The policy states that the insured "may not negotiate or agree to a settlement of any CLAIM without [MLM's] prior consent." *Dkt. 27-1 at 7*. And while JRL also retained the right to withhold consent to a settlement recommended by MLM, MLM had the right to invoke its "hammer clause" to avoid liability beyond the amount for which MLM would have settled. *See id*. Due to the important distinctions between the insurance policy in this case and the policy at issue in *Murphy*, the *Murphy* case does not support MLM's position.

Furthermore, other courts have found that a consent-to-settle provision similar to the one here "is immaterial to the question of whether [the insurer] acted in bad faith in pursuing settlement negotiations..." *Insurance Co. of North America v. Medical Protective Co.*, 768 F.2d 315, 319 (10th Cir. 1985). The Tenth Circuit stated that "[i]t is common practice for an insurer to conduct settlement negotiations in advance of obtaining the insured's final consent to the agreement. These negotiations must be conducted in good faith and

without negligence, regardless of whether or not the insured eventually will consent." *Id*. (citation omitted); *see also Bankr. Estate of Morris v. COPIC Ins. Co.*, 192 P.3d 519, 526 (Colo. Ct. App. 2008) ("'consent to settle' clause does not give an unqualified right to [the insured] to veto settlement").

The Court finds this authority persuasive, especially in light of the provision giving MLM the exclusive right to negotiate McCollough's claims. *Dkt 27-1 at 7*. Thus, the Court is not persuaded by MLM's argument that the insurance policy, by its terms, relieves MLM from control or responsibility over settlement. MLM's motion for summary judgment as to its liability under Section 33-18-201(6) should be denied.

## 2. McCollough's Motion

McCollough also moves for summary judgment on his claim that MLM neglected to attempt in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear. "Reasonably clear" liability is established when it is "clear enough" that reasonable people assessing the claim would agree

on the issue of liability, and that the facts, circumstances, and applicable law leave little room for objectively reasonable debate about whether liability exists. *Peterson*, 239 P.3d 904, 913-14. Once liability becomes reasonably clear, "it must then be determined whether the insurer acted promptly and in good faith given its clear responsibility to cover the claim. These determinations must be made in light of the information the insurer possessed when it considered the underlying claim." *Lorang*, 192 P.3d at 205.

Here again, the fact that MLM was not called upon to consider the claim until after the lawsuit was filed comes into play. While it is clear that the insurer's MUTPA duties survive the filing of the litigation,[2] it is also clear that the duties must be considered in light of a litigant's right to vigorous representation by defense counsel. *See Palmer by Diacon v. Farmers Ins. Exch.*, 861 P.2d 895, 914 (Mont. 1993) ("if defending a questionable claim were actionable as bad faith, it would impair the insurer's right to a zealous defense and even its right

---

[2]*See Federated Mut. Ins. Co. v. Anderson,* 991 P.2d 915 (Mont. 1999) (frivolous appeal on coverage may be offered in evidence to show that the claim handling was malicious).

of access to the courts"). In *Peterson v. St. Paul Fire and Marine Ins. Co.*, 239 P.3d 904 (Mont. 2010), the court further explained:

> Under *In Re Rules,* [2 P.3d 806], we conclude that the District Court did not err when it refused to determine as a matter of law that [defense counsel] was [the insurer's] agent, nor did it abuse its discretion when it denied a jury instruction patterned on this argument. However, *In Re Rules* makes it clear that an insurer cannot simply foist its duties under the UTPA onto defense counsel, and that defense counsel, in turn, is under an obligation to consult with the insurer and should be held accountable for his or her work. Accordingly, on remand a careful reading of our decision in *In Re Rules* may provide some guidance to the parties if they wish to propose an instruction clarifying for the jury the relationship among [defense counsel, the insured, and the insurer].

*Id.* at 918.

Difficult issues may arise at trial regarding what evidence should be admitted and what jury instruction given. *See EOTT Energy Operating Limited Partnership v. Certain Underwriters At Lloyd's of London*, 59 F. Supp. 2d 1072, 1076-1077 (D. Mont. 1999). But at this stage, the Court must conclude that genuine issues of material fact preclude summary judgment as to MLM's liability under Section 33-18-201(6).

During the mediation efforts in September 2008, McCollough demanded $900,000 and MLM offered $20,000. After these initial

attempts, the nature of the parties' subsequent settlement efforts is disputed. McCollough contends that "MLM knew McCollough's offer to settle at mediation for $900,000 was not only within policy liminits, but also a rational starting figure well within the realm of reason..." *Dkt. 70 at 20.* McCollough argues that MLM's settlement offer of $20,000, a sum less than McCollough's attorneys' fees, was unreasonable because it "would all have gone to McCollough's lawyer, leaving nothing for McCollough himself." *Dkt. 70 at 21.* Heenan explained in his deposition that "[MLM] could have tried to make a settlement offer, and if it was in the ballpark of reasonable, there's no one that would have been listening more closely than me." *Dkt. 68-4 at 22.* Finally, McCollough contends that "MLM did not re-evaluate McCollough's claim" after this Court's order establishing liability under the FDCPA, and instead "MLM consciously considered, and then rejected, the idea of trying to determine what amounts were admittedly due." *Dkt. 70 at 21-22.*

MLM disputes these facts. MLM argues that "settlement is a two way street[,]" and McCollough "was opposed to any settlement that did

not entail an admission of wrongdoing from JRL." *Dkt. 67 at 28.* MLM

contends that McCollough declined to make a counteroffer or otherwise

negotiate after receiving MLM's initial offer or after defense counsel

suggested a settlement of approximately $50,000. McCollough's

counsel, it contends, "did not budge on his demand." *Dkt. 75 at ¶ 93.*

McCollough may not agree with MLM's actions in the underlying

case, but there remains a fact issue whether MLM attempted in good

faith to effectuate a prompt, fair, and equitable settlement of the claim.

*See Lorang*, 192 P.3d at 220 (summary judgment for plaintiff

inappropriate despite "the compelling nature of the evidence which

indicates bad faith by [the insurer], as well as the relative strength of

the [plaintiff's] argument compared to that of [the insurer's]"). Thus,

McCollough's motion for summary judgment as to MLM's liability

under Section 33-18-201(6) should be denied.

## D. MLM Motion for Summary Judgment on McCollough's Claim that it Misrepresented Facts

The MUTPA prohibits insurers from "misrepresent[ing] pertinent

facts or insurance policy provisions relating to coverages at issue."

MCA § 33-18-201(1).

Although MLM moves "for summary judgment on all issues in this case…" (*dkt 66 at 2*), MLM does not address Section 33-18-201(1) in its brief. And although McCollough addresses it in his responsive brief, arguing that fact issues preclude summary judgment on this claim, MLM's reply brief again does not mention this issue. Thus, MLM has failed to meet its initial burden under Rule 56, and is not entitled to summary judgment on this claim.

### E.     MLM's Motion for Summary Judgment on Causation

Finally, MLM argues that it is entitled to summary judgment because McCollough cannot prove that MLM's activities caused his alleged damages. MLM contends that McCollough's deposition testimony establishes that his anger and distress was directed at JRL and the "righteous cause" of obtaining either an apology or a vindicating jury verdict. MLM argues that "[n]one of these claims of distress related to bad faith or the violations of MUTPA." *Dkt. 67 at 29.* Although McCollough's response to an interrogatory succinctly summarizes his claim for emotional distress damages against MLM, MLM argues that a prior discovery response may not be used to

contradict subsequent deposition testimony for the purpose of creating a genuine issue of material fact. *Dkt. 74 at 22-23.*

As earlier noted, all reasonable inferences that may be drawn from the facts placed before the Court must be drawn in favor of the party opposing a summary judgment motion. Viewing the damages evidence in favor of McCollough , the Court concludes that a genuine issue exists for trial as to whether MLM's activities caused McCollough damages. For example, when asked at his deposition "what is the emotional distress, and what caused it[,]" McCollough responded:

> A: The fact that all this stuff hasn't stopped, hasn't been corrected. And we've discussed what hasn't been corrected.
>
> Q: You're talking about Johnson, Rodenburg's activity?
>
> A: I'm talking about Johnson, Rodenburg; I'm talking about Minnesota Mutual [MLM]. The same greed that happened before is still happening.

*Dkt. 68-8* at 12 (Depo. McCollough excerpts) (formatting added).

In *Jacobsen v. Allstate Ins. Co.,* 215 P.3d 649 (Mont. 2009), the Montana Supreme Court clarified that where, as here, emotional distress is claimed as an element of damage, the law does not set a definite standard by which to calculate compensation. *Id.* at 663-64.

The "heightened" standard of "serious or severe" distress does not apply here. Under this standard, MLM has failed to demonstrate the absence of a genuine issue of material fact as to the causation issue, and therefore is not entitled to summary judgment on this basis.

## V.    <u>CONCLUSION</u>

Based on the foregoing, IT IS RECOMMENDED that MLM's motion for summary judgment *(Dkt. 66)* be GRANTED IN PART and DENIED IN PART. Specifically, it is recommended that MLM's motion be granted with respect to McCollough's claim that it violated MCA § 33-18-201(4) and denied in all other respects. IT IS FURTHER RECOMMENDED that McCollough's cross motion for summary judgment *(Dkt. 69)* be DENIED.

**NOW, THEREFORE, IT IS ORDERED** that the Clerk shall serve a copy of the Findings and Recommendation of United States Magistrate Judge upon the parties. The parties are advised that pursuant to 28 U.S.C. § 636, any objections to the findings and recommendation must be filed with the Clerk of Court and copies served on opposing counsel within fourteen (14) days after service

hereof, or objection is waived.

DATED this 6th day of March, 2013.

/s/ Carolyn S. Ostby
United States Magistrate Judge